No. 47,699

GALEN D. SENOGLES, *Appellant*, v. SECURITY BENEFIT LIFE INSURANCE COMPANY, *Appellee*.

(536 P. 2d 1358)

Opinion filed June 14, 1975.

*Robert B. Wareheim,* of McCullough, Wareheim & LaBunker, of Topeka, argued the cause and was on the brief for the appellant.

*Gerald L. Goodell,* of Goodell, Casey, Briman & Cogswell, of Topeka, argued the cause, and *Harold S. Youngentob,* of the same firm was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an appeal from a summary judgment rendered for the defendant-appellee (Security Benefit Life Insurance Company), in an action for damages for invasion of privacy. At the time judgment was rendered the trial court had before it the pleadings, a deposition of Galen D. Senogles, plaintiff-appellant, taken by defendant, supporting affidavits filed with defendant's motion, the briefs of the parties, and the proceedings of a pretrial conference.

The question presented is whether communication to a third party of medical information received by defendant from plaintiff's physicians, under authorization given by plaintiff in connection with an application for life insurance, was made under such circum-

stances that the transmission thereof was qualifiedly or conditionally privileged.

The facts are not in dispute and are substantially set forth in the trial court's memorandum decision which we quote in pertinent part:

"This is an action to recover $50,000 in damages from the defendant life insurance company, based upon an alleged invasion of the right of privacy of the plaintiff and an alleged breach of confidential relationship between the plaintiff and defendant, all based upon the transmittal by the defendant of certain medical information applicable to the plaintiff to Medical Information Bureau, an association which provides under certain terms and conditions medical information to member life insurance companies for certain purposes in connection with underwriting risks.

"The facts applicable to defendant's motion for summary judgment are undisputed. On or about February 22, 1972, plaintiff applied to the defendant for a policy of health insurance, application No. 0040037. The application for insurance signed by plaintiff included the following authorization:

" 'I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company or other organization, institution, or person, that has any records or knowledge of me or my health, to give to the Security Benefit Life Insurance Company any such information.'

"As a result of the authorization, the defendant did receive medical information applicable to plaintiff. The information received was to the effect as follows:

"(a) Chest pain, significant but ill defined, no cause indicated, not listed elsewhere—information obtained from attending physician, surgeon, hospital, sanatorium or clinic—within first year, but not known to be present at time of inquiry or application;

"(b) Cardiac arrhythmia, premature contractions or not listed elsewhere (this includes any arrhythmia, not listed elsewhere, except sinus arrhythmia)—information obtained from attending physician, surgeon, hospital, sanatorium or clinic—within first year, but not known to be present at time of inquiry or application;

"(c) Asthma, primary or allergic—information obtained from attending physician, surgeon, hospital, sanatorium or clinic—under treatment, not surgical—within second year.

"Pursuant to its contract with M. I. B., the aforementioned medical information was forwarded to M. I. B. on or about April 10, 1972, in a coded form.

"M. I. B. is a nonprofit, unincorporated trade association formed to conduct a confidential exchange of information between offices of about 700 member life insurance companies. All members of the association are required to comply with rules and regulations which include a requirement that all information received through the M. I. B. will be held confidential and will be kept in such a manner that its confidential character will be maintained. The rules further provide that a member insurance company can obtain information from M. I. B. only after first obtaining medical authorization from their applicant. Pursuant to this rule, Union Central Insurance Company requested medical information

applicable to the plaintiff and received the medical information summarized above in a coded form. By reason of the medical information received by the defendant, and pursuant to the terms of the conditional receipt issued by the defendant, the defendant declined to accept plaintiff's application for insurance and returned to plaintiff, the premium paid by the plaintiff at the time of his application. Plaintiff gave no instructions to any representative of the defendant concerning their authority to secure medical information and what defendant could do with such medical information, other than the written instructions set forth in the insurance application. The only information received by the defendant based upon plaintiff's written authorization set forth in the insurance application were the medical reports from Dr. R. M. Brooker dated March 17, 1972, Dr. James K. L. Choy, dated March 2, 1972, and Dr. Horace T. Green, dated March 27, 1972, *copies of which are attached as exhibits herein."* (Emphasis supplied.)

The trial court then proceeded to discuss some of our recent decisions in actions for invasion of right of privacy; namely, *Johnson v. Boeing Airplane Co.,* 175 Kan. 275, 262 P. 2d 808; and *Munsell v. Ideal Food Stores,* 208 Kan. 909, 494 P. 2d 1063. The trial court relied primarily upon our opinion in *Munsell* in reaching its decision.

At oral argument, defendant's counsel, with consent of plaintiff's counsel, agreed to and has supplied us with a copy of the constitution and rules of the Medical Information Bureau, hereafter referred to as M. I. B.

Before dealing with the precise question presented, we should observe that the trial court rendered its judgment solely on the basis of the existence of a qualified privilege. It did not consider whether plaintiff actually had a case for invasion of right of privacy and, if so, whether plaintiff had shown any damages suffered as a result thereof. In this connection defendant says plaintiff was unable to set forth any damages. Plaintiff takes the position that malice is not in the case; that it was neither necessary to plead it nor prove it. In his deposition plaintiff admitted that he had given no written or oral instructions to defendant, or its agents, other than what appears in the authorization included in the application. In this connection we note that in the authorization, heretofore set out verbatim in the trial court's memorandum decision, the plaintiff authorizes *inter alia* an insurance company or other organization to give to defendant any records or knowledge of defendant's health. Neither party attempts to explain the effect, if any, of including "insurance company or other organization" in this context within the authorization. We shall give it no significance in our consideration. Neither shall we give consideration to the fact that no express limitation on the use

or further communication of medical information was imposed upon defendant by the terms of the authorization.

In view of the posture of the case as presented on appeal we shall confine our decision to the sole question whether, under the particular facts and circumstances shown, the transmission of the medical information to M. I. B. was made in a manner which rendered it qualifiedly privileged. We are not concerned with any question relating to the unauthorized disclosure by a physician concerning a patient which might constitute an actionable invasion of the patient's right to privacy.

Although litigation was scarce until recent times, a citizen's right to privacy has long been recognized in this jurisdiction. (*Kunz v. Allen*, 102 Kan. 883, 172 Pac. 532, L. R. A. 1918D, p. 1151, decided in 1918.) Right of privacy was defined in *Johnson v. Boeing Airplane Co.*, supra, wherein we held:

"The doctrine of the 'right of privacy' is defined as 'the right to be let alone,' the right to be free from unwarranted publicity, the right to live without unwarranted interference by the public in matters with which the public is not necessarily or legitimately concerned, and the right to be free from unwarranted appropriation or exploitation of one's personality, private affairs and private activities." (Syl. ¶ 1.)

The definition in *Johnson* was quoted with approval in *Munsell* wherein we pointed out the distinction between the torts of defamation and invasion of privacy and set out and adopted what was said to be the general rule concerning invasions of the right to privacy in these words:

". . . It is clear from the decisions that only unwarranted invasions of the right of privacy are actionable. The corollary to this rule is that a 'warranted' invasion of the right of privacy is not actionable. Appellant urges that we recognize and apply here the rule that the right of privacy does not prohibit the communication of any matter though of a private nature, *when the publication is made under circumstances which would render it a privileged communication according to the law of libel and slander.* The rule is recognized in 41 Am. Jur., Privacy, § 20, p. 940; *Brents v. Morgan*, 221 Ky. 765, 299 S. W. 967, 55 A.L.R. 964; and in the first comprehensive article on the subject of the 'Right to Privacy' in 4 Harvard Law Review 193, at page 216 published by Samuel D. Warren and Louis D. Brandeis in 1890. We hold that the rule is sound and should be applied in the case at bar." (p. 923.) (Emphasis supplied.)

Based upon the *Munsell* case the trial court reasoned that under the circumstances attendant herein the communication by defendant to M. I. B. was qualifiedly privileged and, in the absence of an affirmative allegation of malice, entered judgment for the defendant.

We believe the reasoning of the trial court was sound and that it made a proper disposition of the case.

Plaintiff argues that *Munsell* is distinguishable on the facts and that the holding therein does not support the trial court's decision. We agree the facts surrounding the publication in *Munsell* are not "four square" to the facts shown in the instant case, but the general principles of law upon which the decision in *Munsell* was predicated are applicable here.

Our decision in *Munsell* was followed by our opinions in *Dotson v. McLaughlin*, 216 Kan. 201, 531 P. 2d 1; and *Froelich v. Adair*, 213 Kan. 357, 516 P. 2d 993, in which the thrust of *Munsell* was elaborated upon. In *Froelich* and *Dotson* we further defined the boundaries for the protection of privacy and gave recognition to the analysis of the right of privacy and the four tort classifications made by Professor Prosser (Prosser, Law of Torts, [4th Ed.], Right of Privacy, § 117, p. 802) and incorporated in Restatement of the Law (Second), Torts, Tentative Draft No. 13, § 652. The classifications are set out in our holding in syllabus ¶ 1 in *Dotson* and need not be repeated here. The *Froelich* case dealt with what has been labeled "Intrusion Upon Seclusion" (§ 652B), while in *Dotson* we held that plaintiff had failed to make out a case under any of the concepts defined in Restatement, *supra*.

In the *Dotson* opinion we spoke of our holding in *Munsell* in this fashion:

". . . There we held that only *unwarranted* invasions of the right of privacy are actionable and that the right of privacy does not prohibit the communication of any matter though of a private nature, when the publication is made under circumstances which would render it a privileged communication according to the law of libel and slander." (p. 206.)

In the *Froelich* opinion we reaffirmed what was said in *Munsell* to the effect that the right of privacy does not prohibit communication of a matter of a private nature when the publication is made under circumstances which would render it a privileged communication according to the law of libel and slander.

The principal thrust of plaintiff's argument on appeal is that the *Munsell* case is not on "all fours" with the case at bar and that, therefore, the trial judge erred in basing his decision on *Munsell*. From what has been said it is readily apparent that even though *Munsell* may not be on "all fours" factually, the principles of law enunciated therein are applicable and control the disposition of the instant case. Concerning an action for invasion of privacy, based

upon the communication of matters of a private nature, *Munsell* settled these principles—(1) a warranted invasion of privacy is not actionable; (2) communication or publication of a matter even of a private nature made, under circumstances which would render it a privileged communication according to the law of libel and slander, will not support an action; and (3) generally, the issue whether a publication is qualifiedly privileged is a question of law to be determined by the court.

We turn then to the precise question whether the circumstances under which the instant communication was made were such as to render it qualifiedly privileged.

The subject of qualified privilege is not new to this court. In the early case of *Kirkpatrick v. Eagle Lodge*, 26 Kan. 384, the distinction between absolute and qualified privilege was pointed out and it was held that the publication in question, which consisted of allegedly false and libelous statements made about the plaintiff in connection with his expulsion from a fraternal organization, was made on an occasion and in such a manner as to prevent an inference of malice, which the law draws from unauthorized communications, and affords a qualified defense, depending upon the absence of malice. Following *Kirkpatrick* numerous cases appear in our reports wherein qualified privilege has been found to exist in various factual situations and liability was denied in the absence of proof of malice. (*e. g., Sowers v. Wells*, 154 Kan. 134, 114 P. 2d 828; *Stone v. Hutchinson Daily News*, 125 Kan. 715, 266 Pac. 78; and *Richardson v. Gunby*, 88 Kan. 47, 127 Pac. 533.) In such cases the burden of proof is on the plaintiff to establish malice.

In the case of *Faber v. Byrle*, 171 Kan. 38, 229 P. 2d 718, 25 A. L. R. 2d 1379, this court elaborated on the distinction between absolute and qualified privilege and considered the latter in depth. The definition of qualifiedly privileged appearing in 33 Am. Jur., Libel and Slander, § 126, pp. 124-126, was quoted and adopted by this court. It reads:

"'. . . A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege

arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits.'" (p. 42.)

The essence of the above quoted definition is restated in 50 Am. Jur. 2d, Libel and Slander, § 195, pp. 698-699.

We believe the communication and the surrounding circumstances under which it was made in the instant case falls within the boundaries of the definition. Defendant had an interest in the medical information which it forwarded to the M..I. B. by reason of which, through its membership, it would receive information pertaining to other applicants for insurance. Defendant had a duty under its contract of membership with M. I. B. M. I. B. had a duty to furnish the information to other members when the requirements of M. I. B. rules were met.

Defendant's counsel vigorously argues that the duty to transmit information was not only required by the contractual relationship between M. I. B. and its members, but was a duty involving the public interest; that it was a legitimate business procedure and vital to the life insurance industry. Defendant's argument is supported by the record.

In the instant case there is no evidence of bad faith on the part of defendant. It is undisputed that the medical information in question was not divulged to the public or to anyone who did not have a legitimate interest in the health of the plaintiff. Our examination of the rules of M. I. B. and affidavits of Joseph C. Wilberding, Executive Director of Medical Information Bureau, indicates the M. I. B. rules are geared to protect against misuse of the information and that it is to be revealed only to home office employees of member companies who directly pass upon the transaction. Medical information is released to a member company only when it has a signed medical authorization from the involved applicant in its home office files.

In this connection Mr. Wilberding stated in his affidavit:

"In order to maintain the strictest security and confidentiality in the exchange of information, M. I. B. had promulgated a number of rules and regulations which must be adhered to by its members. M. I. B. information is not to be made known to insurance agents or anyone else except the member insurance company home office underwriting or claims personnel. General Rules of M. I. B. provide that before a member insurance company can ask for details of medical codes, said member must have in its home office files signed medical authorization from the involved applicant authorizing the member company to obtain information from other insurance companies. . . ."

In addition to the security measures outlined by Mr. Wilberding in his affidavit, rules of M. I. B., which we have examined, provide for strict limitation of the use and possession of code books; that correspondence regarding the meaning of code symbols must be between officers of member companies and the executive director of M. I. B.; and that correspondence regarding medical impairments of applicants may be conducted only by medical directors of other companies.

In a recently published article appearing in Vol. 4 (1974) Rutgers Journal Of Computers And The Law, the author makes a comprehensive analysis of the purposes and activities of M. I. B. He concludes:

"The MIB serves an invaluable function in the life insurance industry by meeting underwriters' informational needs. The proved ability to set premiums which result from use of the MIB benefits the policyholders. It is they who bear the burden of increased costs if an applicant is assessed for premiums inadequate to cover the risk of loss he represents." (p. 40.)

We are satisfied there is a valid business interest in the communication in question; it was made in good faith; and M. I. B. and member companies had a corresponding interest; and that the information was limited in scope to a proper purpose, published in a proper manner and to proper parties only. In other words, the communication here falls within the definition of qualified privilege adopted by this court in *Faber v. Byrle,* supra and followed in other cases cited.

There is no evidence that the privilege accorded to defendant had been lost by abuse thereof. The record reveals that Union Central Life Insurance Company, a member company, had received in its home office information concerning plaintiff and had contacted plaintiff's physicians. The record further shows, however, that Union Central had previously received an application from plaintiff with the signed medical authorization attached.

We have found no reported decisions involving the activities of M. I. B. However, our attention is directed to *Johns v. Associated Aviation Underwriters,* 203 F. 2d 208 (5th Cir. 1953), where, in applying Texas law, the Fifth Circuit Court of Appeals found the existence of a qualified privilege in a libel action based upon a report of an underwriters association concerning a pilot's qualifications. The association performed a service for insurance companies similar to that rendered by M. I. B. to its members. The relationship of the parties and the circumstances surrounding the publication of the

report were similar to those shown to exist in the case at bar. The court stated the applicable rule in these words:

"A communication made in good faith on any subject, in which the person reporting has an interest and in reference to which he has a duty, is conditionally or qualifiedly privileged if made to a person having a corresponding interest or duty. . . ." (p. 211.)

Apparently, California has encoded the rule concerning qualified privilege in such cases. *Mayer v. Northern Life Ins. Co.,* 119 F. Supp. 536 (1953), was labeled a defamation action. The complaint alleged that defendant (Northern Life) had caused false medical information to be recorded in the records of an agency subscribed to by life insurance companies. The agency is not identified in the opinion, but apparently rendered a service similar to that performed by M. I. B. In applying California law the court said:

". . . However, the allegations of the complaint disclose that this is a case of qualified privilege within the provisions of Section 47 (3) of the Civil Code of the State of California. . . ." (p. 536.)

The section of the California Code (West's Annotated, California Codes [Civil] § 47), referred to reads:

"A privileged publication or broadcast is one made—
"3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supporting the motive for the communication innocent, or (3) who is requested by the person interested to give the information."

Since plaintiff had failed to allege malice the court determined that his complaint failed to state a claim upon which relief could be granted and dismissed the action.

We agree with defendant that cases involving agency credit reporting wherein a communication to those with a legitimate business report is generally deemed qualifiedly privileged are analogous in many respects to the case at bar. Kansas cases may be found in Vols. 1-3 Hatcher's Kansas Digest [Revised Edition-Permanent Supplement], Libel and Slander, § 37; and Vol. 6A West's Kansas Digest, Libel and Slander, § 44 (4). In the recent case of *Kansas Electric Supply Co. v. Dun and Bradstreet, Inc.,* 448 F. 2d 647 (10th Cir. 1971), The Tenth Circuit Court of Appeals, in applying Kansas

law, approved a jury instruction to the effect that credit reports of Dun and Bradstreet were conditionally privileged.

The judgment is affirmed.

SCHROEDER, J., dissenting.

FROMME, J., not participating.