(579 P.2d 721)

No. 48,946

MARGARET L. DOBBYN, *Appellant,* v. MARGENE NELSON, G. JAY RAUSCH and VIRGINIA QUIRING, *Appellees.*

Opinion filed June 9, 1978.

*Charles S. Scott* of Scott, Scott, Scott & Scott, of Topeka, for the appellant.

*Richard H. Seaton,* university attorney, of Manhattan, and *Howard Harper* of Harper & Hornbaker, Chartered, of Junction City, for the appellees.

Before FOTH, C.J., SPENCER and SWINEHART, JJ.

SPENCER, J.: In an action for damages based upon libel, summary judgment was entered for defendants on the grounds of qualified privilege with no showing of malice. Plaintiff appeals.

During the years 1974 and 1975, plaintiff was employed as supervisor of the Social Sciences Division of the Kansas State University Library in Manhattan, Kansas. Defendant Margene

Nelson was employed as a library assistant in the General Records Division of the library. Defendant G. Jay Rausch was the library director and defendant Virginia Quiring was assistant to the director. Quiring was plaintiff's immediate superior.

On September 25, 1974, Nelson had conducted a tour of the library for a freshman orientation group. Two of the students in the tour group complained of the conduct of a member of the library staff. Nelson reported this complaint to Rausch, who requested that she reduce it to writing and deliver it to him. She did so as follows:

"September 26, 1974

"Dear Dr. Rausch:

"While giving a tour to a Freshman Orientation group yesterday, a very distressing occurrence was related to me. When I asked if any of the students had yet used the library, one of the girls indicated she had. I then asked if she had found the materials she was seeking. She said she had had difficulty, so she had asked a librarian to help her. This librarian replied 'If you don't know how to use the library by now, well it's too late.' Another girl in the group indicated she was present when this statement was made, and that the librarian was very sarcastic and refused to help them in any way. Since the student had told the other group members about it, I felt I should pursue the matter and try to determine if the person in question were indeed a librarian, and if so, who it was.

"From the physical description given me: female, middle-aged, gray hair pulled back away from her face, sarcastic, abrupt manner, I believe they were referring to Margaret Dobbyn. If this is indeed the case, and from other reports I have had from students who have been refused their requests for help on the second floor, I tend to believe it is, I am extremely upset that this is the image we are projecting to our student body and other patrons. I don't know what can be done about the situation, but I thought someone should inform you of the complaints we are receiving at the General Reference desk.

"Sincerely,

/s/ Margene Nelson

"Margene Nelson"

The letter remained in Rausch's files for some months. In early 1975, plaintiff filed a grievance with the internal Kansas State University library grievance committee protesting her job evaluation for the year 1974 as given by her immediate supervisor Quiring. The hearing on her complaint was held February 6, 1975. A few days prior to that date, Rausch delivered the Nelson letter to Quiring for her use at the hearing in support of her job evaluation of plaintiff. Quiring submitted the letter for that purpose.

Plaintiff alleges that the contents of the Nelson letter were false

and defamatory and that Nelson maliciously composed and published the letter. She further alleges that transmittal of the letter by all defendants was with "actual malice with willful intent to injure . . . ." After issues were joined and discovery completed, defendants by their motion to dismiss were granted summary judgment. The trial court found that the Nelson letter was qualifiedly privileged and that there was no evidence of actual malice.

In defamation actions, two classes of privilege are recognized—absolute privilege and conditional or qualified privilege. There is no liability on a conditionally or qualifiedly privileged communication absent the existence of actual malice. *Bradford v. Mahan,* 219 Kan. 450, 548 P.2d 1223 (1976). Proof of actual malice when a conditional privilege is found to exist requires a plaintiff to prove that the publication was made with knowledge that the defamatory statement was false or with reckless disregard of whether it was false or not. *Schulze v. Coykendall,* 218 Kan. 653, 545 P.2d 392 (1976). There is no claim here of absolute privilege.

Ordinarily a publication is qualifiedly or conditionally privileged if it is made under circumstances and in a manner which repel, preclude or rebut the inference of malice arising *prima facie* from a statement prejudicial to the character of the plaintiff. *Schulze v. Coykendall,* supra. The concept has been further defined:

"A communication is qualifiedly privileged if it is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, if it is made to a person having a corresponding interest or duty. The essential elements of a qualifiedly privileged communication are good faith, an interest to be upheld, a statement limited in its scope to the upholding of such interest and publication in a proper manner only to proper parties." *Senogles v. Security Benefit Life Ins. Co.,* 217 Kan. 438, Syl. 3, 536 P.2d 1358 (1975).

The determination of whether a conditional privilege exists is a matter of law for the court when the facts upon which such a determination must stand are undisputed. *Schulze v. Coykendall,* supra.

There is no claim that the subject matter of the letter (courtesy in dealing with library patrons and such patrons' complaints of the lack thereof) is not one in which all of the parties who transmitted the letter, as well as those who received it, had a duty or interest. Nelson, whose job to a large extent dealt with public

relations, obviously had a duty and interest in reporting the matter to the director of the library, Rausch. Rausch in turn had a duty and interest in receiving such information. The conduct of plaintiff as reported in the letter was relevant to her job evaluation and, therefore, Quiring had a duty and interest in receiving the letter from Rausch and transmitting it to the grievance committee. The letter was limited in its scope to upholding the interest involved and publication of the letter was limited to the parties named, *i.e.*, Nelson, Rausch, Quiring, and the grievance committee.

Plaintiff argues that the publication was not made in "good faith." She claims that Nelson lacked good faith because she (Nelson) failed to ascertain the identity of the students who reported receiving discourteous treatment and failed to verify the truth of their allegation. Plaintiff denotes such failure as "negligence" and claims that it defeats the privilege.

Noting that the definition of qualified privilege stated by our Supreme Court in *Senogles,* supra, was adopted essentially from what is now 50 Am. Jur. 2d, *Libel and Slander* § 195, pp. 698-699, plaintiff points to 50 Am. Jur. 2d, *Libel and Slander* § 198, which provides in part:

"It has been held that the law imposes upon one publishing derogatory information, even for laudatory purposes, the responsibility of exercising due care in knowing whereof he speaks, and that a conditional privilege may be destroyed by a failure to exercise reasonable care and diligence to ascertain the truth of the defamatory matter. . . ." (pp. 704-705.)

Plaintiff fails to note that the section continues:

"On the other hand, there is authority to the effect that if there are no circumstances that are reasonably sufficient to put the defendant on notice that an imputation, which he reasonably believes to be true, is false, qualified privilege is not lost because he does not conduct an independent investigation to determine the truth or falsity of the imputation . . . ." (p. 705.)

Is there any evidence that any of the defendants were motivated by ill will or a lack of good faith in publishing the letter? The petition can be read as so alleging. It speaks of the "ill feelings" of the defendants toward plaintiff because of her complaints to the Kansas Commission on Civil Rights and the Equal Employment Opportunity Commission. However, on motion for summary judgment the pleadings are not controlling as summary judgment contemplates piercing the allegations of the pleadings

by affidavits and discovery. *Meyer, Executor v. Benelli,* 197 Kan. 98, 415 P.2d 415 (1966).

Nelson testified that she was not even aware of the complaints. When pressed to state what she felt demonstrated ill will on the part of Nelson, plaintiff could say only that writing the letter itself showed ill will. Later she stated that she thought Nelson had written the letter to gain favor from Rausch. Rausch and Quiring testified that they "might" have known of the complaints. Quiring stated that she knew plaintiff was active in women's political awareness and that she objected to this only because plaintiff spent working time on private matters.

Plaintiff is not specific in her testimony as to what she feels demonstrates ill will or lack of good faith on the part of defendants in publishing the letter. She testified at some length regarding her feelings that all of the defendants had ill feelings toward her in general. She states that she was met with hostility by the library as a whole; that groups would gather and tell untrue gossip; and that Quiring demonstrated ill feelings from the moment she became assistant to the director. She refers to events occurring after transmittal of the letter. For instance, she feels that ill will by Rausch is shown by the fact that he affirmed her poor job evaluation and by his attitude in an interview she had with him after affirmance by the grievance committee. She feels the very fact Rausch gave Quiring the letter to pass onto the grievance committee shows ill will.

It is clear that each of the defendants had a duty and a corresponding interest in the publication of the Nelson letter, imposed upon each of them by the nature of their employment. In the absence of circumstances reasonably sufficient to put them on notice that the contents of the letter were false, they were not obliged to conduct an independent investigation to determine the truth or falsity of those statements.

We hold that the Nelson letter was a conditionally privileged communication for which there can be no liability on the part of the defendants unless publication of that letter was with knowledge that the statements contained therein were false or with reckless disregard as to whether they were false. Our review of the record reveals nothing to indicate that any of the defendants had actual knowledge that the contents of the Nelson letter were false. In support of the position that the publication was not with

"reckless disregard," Rausch stated in his deposition that he had received several similar complaints of plaintiff's performance prior to the Nelson letter. He referred specifically to complaints from others of the library staff, faculty members and students. Plaintiff expresses only her opinion that defendants should have known the letter was false.

We are mindful of *Bowen v. Westerhaus*, 224 Kan. 42, 578 P.2d 1102 (1978), wherein it is stated:

"In considering a motion for summary judgment a trial court must give to a litigant against whom judgment is sought the benefit of all inferences that may be drawn from the admitted facts under consideration. (*Timi v. Prescott State Bank*, 220 Kan. 377, Syl. ¶ 2, 553 P.2d 315 [1976].) A court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties. (*Henrickson v. Drotts*, 219 Kan. 435, 438, 548 P.2d 465 [1976].) Whether a party acts in good faith depends not only on the facts and circumstances but also on his state of mind." (224 Kan. at 45.)

We find nothing in the record to indicate a lack of good faith on the part of the defendants or a willful intent to injure the plaintiff. Granting to plaintiff the benefit of all inferences that may be drawn from the evidence, there remains no issue as to any material fact.

Judgment affirmed.