**Ronald K. NAAB, Plaintiff,**

v.

**INLAND CONTAINER CORPORATION, and Joseph P. Miller, Defendants.**

**No. 93–1501–PFK.**

United States District Court,
D. Kansas.

Dec. 29, 1994.

Leroy C. Rose, Garden City, John E. Cowles, Wichita, KS, for plaintiff.

John N. Badgerow and Brian F. Stayton, of Spencer, Fane, Britt & Browne, Overland Park, KS, for defendants.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, Chief Judge.

This matter comes before the court on defendants Inland Container Corporation (Inland) and Joseph P. Miller's motion for summary judgment. Plaintiff Ronald K. Naab brought this suit against his former employer, Inland, and his former supervisor at Inland, Miller, in the District Court of Finney County, Kansas. Inland removed the action to this court based upon diversity of citizenship, 28 U.S.C. § 1332. Naab claims he was wrongfully terminated by Inland and that he was defamed by the publication of inaccurate statements in a performance appraisal prepared by Miller. On December 7, 1994, the court heard the parties' arguments and then adjourned to review and consider the arguments. The court is now ready to make the following findings of fact and conclusions of law.

In April 1981, Naab applied and was interviewed for employment by Inland at its Garden City, Kansas plant. His first interview was conducted by Leo Riggs. At that interview, Riggs indicated Inland was looking for "long-term employees for career opportunities." Naab's next interview was with Mike Shoemaker. Shoemaker stated that Inland was an excellent company to work for and that they were looking for people for "long-term employment." Although Naab now cannot recall the exact words of the conversation, during the interview with Shoemaker, Naab stated that he was looking for long-term employment, as opposed to a temporary or insecure position. Naab, however, did not define what he meant by "long-term employment." Naab was then interviewed by William White. White indicated Inland was a "secure" company for employment. On May 18, 1981, Naab was hired by Inland while the Garden City plant was still under construction. Production started between July 1 and August 1, 1981. Naab knew that while working for Inland he could terminate his employment at any time, for any or no reason.

Based on his three interviews, Naab believed that if he came to work and did a good job, he could work for Inland until his retirement. Riggs, who hired Naab, also believed that if a person did his job properly, that person could stay employed by Inland. Naab further based his belief that he had an implied contract for employment until retirement on the following: (1) the newspaper advertisement for the position mentioned Inland's retirement benefits; (2) the employee manual stated Inland was an equal opportunity employer; (3) the company newspaper mentioned the retirement of employees as they occurred; and (4) other employees, who in Naab's opinion performed poorly, were demoted or transferred rather than terminated. Naab, however, does admit that Riggs, White, and Shoemaker did not expressly make an offer for employment until retirement.

Naab bases his defamation claim upon a performance appraisal prepared by Miller,

Naab's immediate supervisor. Miller took his time in preparing the appraisal, accumulated the facts regarding Naab, and verified the facts in the appraisal from different sources. Using an Inland company form, Miller checked several boxes of the performance appraisal that indicated Naab's positive qualities, including the following:

Thorough knowledge of area of activity. Good understanding of company policies and procedures.

. . . .

Jud[g]ment is based on sound logic and all pertinent facts. Has keen perception and insight when rendering decisions.

. . . .

Well organized. Plans ahead on work to be done.

. . . .

Self-starter. Resourceful and aggressive. Moves ahead on own initiative.

. . . .

Very creative. Generates many sound and original ideas. (Defs.' Suggestions in Support, Ex. E at 4.)

Miller also made comments that indicated Naab's negative qualities, including: "Work is often incomplete. Accuracy usually ok." "Not a team member." "No open insubordination[;] simply ignores & delays assignments giving priority to his own goals and does not come forward to explain failure or omission." (*Id.*) Apparently, Naab objects most to Miller's comments in which he stated: "Ron is very committed to doing a good job[;] he is not spending his energy where the organization needs it most. If he will quit focusing on how much smarter he is than everyone else and start focusing on what he can do to help & support & train those who are not as brilliant as himself, Inland Garden City will be better off." (*Id.* at 6.)

The appraisal listed a total of 24 objectives which Naab was instructed to attain. The first seven had been given to him in his 1991 appraisal. On July 13, 1992, 19 objectives were added to the original seven; however, in the 1992 appraisal two of these objectives were dropped. Of the total objectives, Naab was recognized as unqualifiedly having ac-complished five. He was recognized as having accomplished at least partially seven objectives. Only five objectives were unqualifiedly listed as not having been met by Naab in the appraisal. Naab was given an ambiguous evaluation on the remaining objectives.

On December 2, 1992, Miller spent approximately 10 hours discussing the performance appraisal with Naab. Miller told Naab he had one year to improve his performance, and if Naab did not improve by November 1993, he would be terminated. Naab alleges Miller told him "the people at corporate think that the Naab brothers run this plant, and when I am through with you, they are going to know you do not run this plant." Naab further alleges Miller stated Naab had failed in his job at Inland and that Miller was going to be sure he was not blamed for Naab's failure.

On February 17, 1993, Riggs terminated Naab's employment with Inland. In his deposition, Riggs testified that the performance appraisal prepared by Miller played no part in his decision to terminate Naab. Harold King, a vice president of Inland, approved Naab's termination. King did not base his approval on Miller's 1992 performance appraisal. In fact, he has never seen Miller's 1992 performance appraisal.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must resolve all disputed facts in favor of the nonmoving party. *White v. General Motors Corp., Inc.,* 908 F.2d 669, 670 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). The moving party must prove beyond a reasonable doubt that it is entitled to summary judgment. *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir.1980).

The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The existence of some disputed facts does not automatically preclude granting summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553.

The court must apply Kansas law to this diversity action, and therefore this case is governed by the Kansas employment-at-will doctrine. "The doctrine holds that in the absence of a contract, express or implied, between an employee and her employer covering duration of employment, the employment is terminable at the will of either party." *Madrigal v. IBP, Inc.,* 811 F.Supp. 612, 614 (D.Kan.1993), *aff'd,* 21 F.3d 1121 (10th Cir.1994); *see also, Johnson v. National Beef Packing Co.,* 220 Kan. 52, 54, 551 P.2d 779 (1976) (under employment-at-will doctrine, "employee states no cause of action for breach of contract by alleging that he has been discharged"). Here, Naab alleges he had an implied contract of continued employment until his retirement, an exception to the employment-at-will doctrine.

In *Allegri v. Providence–St. Margaret Health Center,* 9 Kan.App.2d 659, 684 P.2d 1031 (1984), the court reversed the district court's decision that no implied contract existed covering the duration of plaintiff's employment with defendant. The Kansas Court of Appeals stated:

> Where it is alleged that an employment contract is one to be based upon the theory of "implied in fact," the understanding and intent of the parties is to be ascertained from several factors which include written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.

9 Kan.App.2d at 659, syl. 5, 684 P.2d 1031. The court further explained, "Intent is normally a question of fact for the jury, and may be shown by acts, circumstances and inferences reasonably deducible therefrom and need not be established by direct proof." 9 Kan.App.2d at 663, 684 P.2d 1031 (citation omitted).

In *Harris v. Board of Public Utilities of Kansas City,* 757 F.Supp. 1185 (D.Kan.1991), after being terminated, a public employee brought a civil rights action against his employer. Judge Van Bebber addressed the issue of whether the plaintiff had a viable cause of action pursuant to 42 U.S.C. § 1983, which required a determination of whether an implied contract for a definite duration had been created between the parties. The court stated:

> In *Conaway v. Smith,* 853 F.2d [789, 793 (10th Cir.1988) ], the Tenth Circuit held that an expectation to remain employed as long as one performs the duties of his or her employment properly is a unilateral expectation and does not, by itself, create a property interest in that employment. This is true even where that expectation is created by verbal or nonverbal communications of the employer. *Id.*

757 F.Supp. at 1190.

Naab contends the facts of this case establish an implied contract of employment until retirement. For factual support he points to the comments made to him during the interview process, especially by Riggs who assured Naab that Inland was looking for "long-term" employees. Naab argues a jury must determine the intent of the parties and whether the parties formed an implied contract. Naab further maintains that his claim of an implied contract is not based upon his own unilateral expectations. Finally, Naab argues cases such as *Harris, supra,* and others cited by defendants, can be distinguished because they involve § 1983 actions and the issue of property interests.

Naab cites *Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 815 P.2d

72 (1991), in which the plaintiff claimed a breach of an implied contract of employment. The trial court denied defendants' motion for summary judgment, and at the conclusion of the trial, the jury found for the plaintiff and awarded $35,000.00 in damages. The defendants appealed and argued that the trial court erred by denying their summary judgment motion and dispositive motions at trial. The Kansas Supreme Court acknowledged the evidence in support of the implied contract of employment was weak, but stated, "[w]hether an implied contract of employment existed is a classic question of fact that had to be submitted to the jury." 249 Kan. at 141, 815 P.2d 72. The court also explained:

> The evidence offered by Brown is not extensive. The Personnel Policies Manual contains specific provisions for terminating an employee, including a list of policy violations that are grounds for termination. Yet this manual contains two statements stressing that employment with UMH is "at will." Brown presents no evidence of additional conversations or statements made to him indicating that the terms of the Personnel Policies Manual were meant to be an implied contract of employment requiring his continued employment unless dismissed for cause. Brown instead relies upon the trial testimony of UMH supervisory employees indicating their intent to treat employees fairly and to follow the rules.
>
> Although the facts and inferences reasonably to be drawn from the evidence in favor of Brown are not strong, it is possible that reasonable minds could reach different conclusions based upon the evidence about whether a motion for directed verdict should be granted or denied. In such a case, the evidence must be submitted to the jury.

249 Kan. at 139, 815 P.2d 72.

Similarly, in *Koopman v. Water Dist. No. 1 of Johnson County, Kan.*, 972 F.2d 1160 (10th Cir.1992), a public employee brought a wrongful discharge action against his former employer. The Tenth Circuit reversed the district court's decision to grant defendants' motion for summary judgment on the issue of whether an implied contract existed. The court relied upon *Brown* and stated: "The *Brown* court extensively reviewed the development of the implied-in-fact employment contract law of Kansas and concluded that with rare exceptions, whether an implied-in-fact contract exists is a question of fact for the jury." 972 F.2d at 1165.

■ Here, Naab has presented enough evidence, if viewed in a light most favorable to him, to require a jury to determine the fact question of whether an implied-in-fact contract existed. If the court assumes an implied contract for employment until retirement existed between Naab and Inland, then the next issue to be addressed is whether Inland had cause to terminate Naab's employment. An employer always has the right to terminate an employee if cause exists.

■ Naab admits that Miller took his time in preparing the November 1992 performance appraisal and verified the facts in the appraisal from different sources. Naab does not controvert the fact that he had been given over 20 objectives. Of those objectives, Naab had not met five of them and only partially accomplished seven of them. Miller told Naab that if his job performance did not improve by November 1993, Naab would be terminated. It is well documented, however, that Inland had cause to terminate Naab's employment at the time of his November 1992 performance appraisal. Furthermore, Riggs, who made the decision to terminate Naab, based his decision on his own observations of Naab's poor work performance. Thus, even assuming an implied contract for employment existed, Naab does not have a cause of action for breach of that contract.

■ Defendants argue summary judgment on Naab's defamation claim is proper because the alleged communications are subject to a qualified privilege and there is no evidence of actual malice.

A communication is qualifiedly privileged if it is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, if it is made to a person having a corresponding interest or

duty. The essential elements of a qualifiedly privileged communication are good faith, an interest to be upheld, a statement limited in its scope to the upholding of such interest and publication in a proper manner only to proper parties.

Generally, whether a publication is qualifiedly privileged is a question of law to be determined by the court.

*Senogles v. Security Benefit Life Ins. Co.,* 217 Kan. 438, syl. 3–4, 536 P.2d 1358 (1975).

■ Kansas recognizes a "qualified privilege exists with respect to business or employment communications made in good faith and between individuals with a corresponding interest or duty in the subject matter of the communication." *Turner v. Halliburton Co.,* 240 Kan. 1, 8, 722 P.2d 1106 (1986). "By virtue of the qualified privilege, the employer who is evaluating or investigating an employee in good faith and within the bounds of the employment relationship is protected from the threat of defamation suits by the enhanced burden of proof;" that burden requires the plaintiff to show the defendant "acted with knowledge of falsity or reckless disregard for the truth." *Luttrell v. United Telephone System, Inc.,* 9 Kan.App.2d 620, 622, 683 P.2d 1292 (1984), *aff'd,* 236 Kan. 710, 695 P.2d 1279 (1985).

Naab concedes that a qualified privilege applies to his defamation claim, but asserts the performance appraisal was a product of actual malice, an exception to qualified privilege. Naab maintains that some of Miller's comments were factually false. Naab further contends Miller's statement that: "The people at corporate think that the Naab brothers run this plant, and when I am through with you, they are going to know you do not run this plant," evidences Miller's malice. Naab argues the issue of Miller's actual malice must be left to a jury to determine. *See Hutchinson v. Proxmire,* 443 U.S. 111, 120 n. 9, 99 S.Ct. 2675, 2680 n. 9, 61 L.Ed.2d 411 (1979) ("The proof of 'actual malice' calls a defendant's state of mind into question, *New York Times Co. v. Sullivan,* 376 U.S. 254 [84 S.Ct. 710, 11 L.Ed.2d 686] (1964), and does not readily lend itself to summary disposition").

Defendants contend any feelings of ill will between Miller and Naab do not satisfy a showing of actual malice. *See Dobbyn v. Nelson,* 2 Kan.App.2d 358, 362–63, 579 P.2d 721, *aff'd,* 225 Kan. 56, 587 P.2d 315 (1978). Defendants also argue Naab must, and has failed to, present clear and convincing evidence of Miller's actual malice. For support, defendants cite *Knudsen v. Kansas Gas & Elec. Co.,* 248 Kan. 469, 483, 807 P.2d 71 (1991), in which the court stated:

In general, the question of actual malice in a defamation action is a question of fact for the jury. However, under certain circumstances, a motion for summary judgment and the granting of that motion are appropriate. If the plaintiff fails to offer clear and convincing evidence of an extrinsic character to prove actual malice on the part of the defendant in the publication of a slander on a qualifiedly privileged occasion, there is no issue of material fact to be determined, and it is the duty of the trial court to grant the defendant's motion for summary judgment. See *Anderson [v. Liberty Lobby, Inc.,* 477 U.S. 242, 252–55, 106 S.Ct. 2505, 2512–14, 91 L.Ed.2d 202 (1986) ]; *Ruebke [v. Globe Communications Corp.,* 241 Kan. 595, 602, 738 P.2d 1246 (1987) ].

In the case currently under consideration, Naab has testified that Miller had ill feelings toward him based upon alleged comments made during the performance appraisal. Naab, however, admits that Miller carefully and conscientiously prepared the performance appraisal. In addition, Riggs made a similar independent evaluation regarding Naab's performance. Naab further concedes that qualified privilege applies here unless Miller's actual malice can be shown.

The court finds Naab has failed to meet his burden of proof required to survive the defendants' motion for summary judgment on Naab's defamation claim. The court also notes that Naab bases his defamation claim on the November 1992 performance appraisal prepared by Miller. Naab was terminated by Riggs on February 17, 1993. Riggs based his decision on his own observations at the Garden City plant. Therefore, Naab is un-

able to prove the performance appraisal caused his termination.

IT IS ACCORDINGLY ORDERED.