**Maureen POLSON, Plaintiff,**

**v.**

**Jerry DAVIS, in his individual and official capacity and as an employee of the City of Kansas City, Kansas, and the City of Kansas City, Kansas, Defendants.**

**Civ. A. No. 84–2211.**

United States District Court,
D. Kansas.

April 25, 1986.

James L. Crabtree, Sheila M. Janicke, Crabtree, Easterday, Crabtree & Janicke, Overland Park, Kan., for plaintiff.

Annette Eslick, Asst. City Atty., Daniel B. Denk, McAnany, Vancleave & Phillips, Kansas City, Kan., for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

The defendants in this action have filed a motion for summary judgment as to virtually all aspects of plaintiff's second amended complaint. In this memorandum and order, we address each of the numerous legal grounds asserted in support of that motion.

Entry of summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering such a motion, we must examine all evidence in the light most favorable to the opposing party. *Prochaska v. Marcoux,* 632 F.2d 848, 850 (10th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981). Where differing inferences could reasonably be drawn from conflicting affidavits and depositions, summary judgment should be denied. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, when the movant has properly supported his motion, the opponent's response must, by affidavit or otherwise, set forth specific facts showing that there is a genuine issue for trial. "If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.P. 56(e). Where only partial summary judgment is appropriate, we may enter an order to that effect. Fed.R.Civ.P. 56(d).

Resolving all factual disputes in favor of plaintiff, the facts material to the resolution of this motion are as follows. On January 12, 1981, defendant Davis, as Director of Personnel for defendant City of Kansas City, Kansas, ["the City"] confirmed via letter that plaintiff had been hired as the City's "Employment Supervisor." The letter stated that plaintiff was to assume her duties as of January 19, 1981, and was to receive a salary of $18,-000.00 per year.

The letter contained no information concerning any definite term of employment. Plaintiff contends, however, that she did receive defendant Davis' oral assurance that she would be employed for such a definite term. In an affidavit, plaintiff states that defendant Davis informed her of the duties she would be expected to perform. The affidavit then continues: "The term of employment agreed upon for me to accomplish these tasks was three years, with an open possibility of extension beyond that time." Through his own affidavit, defendant Davis denies that any such definite term of employment was ever discussed.

As agreed, plaintiff did commence her employment with the City on January 19, 1981. Eventually she became convinced that the City was failing to abide by various employment discrimination laws and guidelines. In particular, the City discriminated against its female employees on the basis of their sex. Plaintiff repeatedly objected to this discriminatory behavior. In response to her protests, defendants retaliated against plaintiff by subjecting her to unfavorable conditions of employment.

On May 20, 1983, plaintiff received formal notice of her termination. Although that was the last day on which she worked, her termination did not become effective until June 20, 1983. The notice of termination (prepared by defendant Davis) indicated that the reason therefor was "unprofessional conduct." That notice was placed in plaintiff's personnel file and in a separate personnel notebook. For purposes of this motion, of course, we must assume that this expressed reason for plaintiff's termination was (1) false, (2) a mere pretext for discrimination on the basis of plaintiff's sex, and (3) in retaliation for plaintiff's opposition to defendants' discriminatory employment practices. Plaintiff received no hearing at which she could dispute the factual basis for her termination.

Other persons were made aware of defendant Davis' comment regarding plaintiff's "unprofessional conduct." In the performance of their duties, at least three other City employees were informed of this comment. Defendant Davis also gave permission for the press to examine the personnel notebooks, including the notebook containing plaintiff's notice of termination. Finally, plaintiff herself revealed this comment to potential employers when directly asked why she left the City's employ. Plaintiff states that she chose to repeat this comment rather than be untruthful to her potential employers.

At some point, defendant Davis informed plaintiff that he would ruin her reputation and that she would never again function as a professional in the community. And indeed, since her termination, plaintiff has been unable to obtain a full-time professional position.

The City had apparently terminated the employment of other employees who had criticized its employment practices, and had also engaged in a pattern of sex discrimination. Plaintiff reports that a City ordinance required defendant Davis, as personnel director, to establish a grievance procedure for City employees, and that plaintiff participated in discussions regarding a plan to make that grievance procedure available to all employees. Plaintiff concedes, however, that such a plan was never officially adopted by the City council.

On May 16, 1984, plaintiff brought this action against both the City and defendant Davis. As stated in plaintiff's second amended complaint (and reiterated in the pre-trial order), plaintiff brings this action in seven counts. Count I seeks recovery under 42 U.S.C. § 1983, with allegations that defendants' conduct violated plaintiff's first amendment right to free speech, her fourteenth amendment right to equal protection of the laws, and her fourteenth amendment right to procedural due process in the deprivation of her property and liberty interests. Counts II, III, IV, V, and VI allege pendent state law claims, with waiver of sovereign immunity predicated upon the Kansas Tort Claims Act, K.S.A. 75–6101 to 75–6115. Substantively, these counts allege claims for defamation, wrongful discharge, outrage, intentional infliction of emotional distress, and negligent supervision, respectively. Count VII is based on Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, and contains independent claims for discrimination on the basis of plaintiff's sex, 42 U.S.C. § 2000e–2(a), and retaliation on account of plaintiff's opposition to defendants' sexually discriminatory employment practices, 42 U.S.C. § 2000e–3(a). Under each of these seven counts, plaintiff seeks to recover both compensatory and, with the exception of Count VII, punitive damages.

## I. *Claims Based on Section 1983.*

### A. *First Amendment Violation.*

 Plaintiff alleges that she was terminated in retaliation for her statements objecting to defendants' sexually discriminatory employment practices. It is now clear that "a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983); *see also Childers v. Independent School District No. 1 of Bryan County,* 676 F.2d 1338, 1341 (10th Cir.1982); *Owens v. City of Derby, Kansas,* 586 F.Supp. 37, 41 (D.Kan.1984). However, the first amendment's protection against retaliatory action does not apply unless the plaintiff's statements can "be fairly characterized as constituting speech on a matter of public concern." *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689. *See also Pickering v. Board of Education,* 391 U.S. 563, 571, 88 S.Ct. 1731, 1736, 20 L.Ed.2d 811 (1968); *Owens,* 586 F.Supp. at 41. To be protected, an employee's statements need *not* be communicated to the public; a public employee who arranges to communicate his views privately with his employer also enjoys first amendment protection. *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 415, 99 S.Ct. 693, 696, 58 L.Ed.2d 619 (1979).

 Assuming an employee's statements do rise to the level of a public concern, the court must still balance "the interests of the employee, as a citizen, in commenting upon matters of public concern" against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick,* 461 U.S. at 142, 103 S.Ct. at 1687 (quoting *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)). In each case, this balancing process must be conducted by the court. *Connick,* 461 U.S. at 150 & n. 10, 103 S.Ct. at 1691–92 & n. 10.

 If this balance is found to weigh in favor of the employee, the employee still bears the burden of showing that his statements were a "substantial" or "motivating" factor in the unfavorable employment action. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Brown v. Reardon,* 770 F.2d 896, 905 (10th Cir.1985); *Childers,* 676 F.2d at 1341. Should an employee meet this burden, the employer may still prevail if it meets the burden of showing, by a preponderance of the evidence, that it would have reached the same employment decision even in the absence of the protected statements. *Doyle,* 429 U.S. at 287, 97 S.Ct. at 576; *Childers,* 676 F.2d at 1341.

 In the instant case, we have no hesitancy in concluding that plaintiff's statements were on a matter of public concern. Clearly, the public has a great interest in seeing that its officials do not discriminate in the employment of that half of the population which happens to be female. At this point, however, we have too little information with which to conduct the process of balancing plaintiff's interests as a citizen against defendants' interest in the efficient performance of their public duties. Moreover, questions remain for the jury as to whether plaintiff's statements were a "motivating factor" in her termination and, if so, whether defendants can prove that plaintiff's employment would have been terminated even absent her protected statements. For these reasons, we must deny defendants' motion for summary judgment on plaintiff's section 1983 claim as it relates to alleged first amendment violations.

### B. *Title VII Violations.*

As noted above, plaintiff's second amended complaint contains a separate count alleging violations of Title VII. In their motion for summary judgment, defendants contend that section 1983 provides no remedy for violation of rights created and protected by Title VII. Noting that "the right which plaintiff seeks to vindicate in this action is her right under Title VII to be free from alleged retaliation and dismissal," defendants contend that we lack juris-

diction under section 1983 to hear those claims. Although defendants' contention receives inferential support from the case law, we must ultimately disagree.

In support of their position, defendants place primary reliance on the decisions of the Supreme Court in *Great American Federal Savings & Loan Assn. v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), *Middlesex County Sewerage Authority v. National Sea Clammers Assn.*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), and *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). In *Novotny*, the Court held that "a right created by Title VII cannot be the basis for a cause of action under [42 U.S.C.] § 1985(3)." 442 U.S. at 378, 99 S.Ct. at 2352. The *Sea Clammers* Court held that the specific remedial devices provided in two environmental statutes demonstrated a congressional intent to preclude reliance on such statutes in a section 1983 action. 453 U.S. at 20, 21, 101 S.Ct. at 2626, 2627. And in *Brown*, the Court held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment," thus dismissing a claim based on 42 U.S.C. § 1981. 425 U.S. at 835, 96 S.Ct. at 1969. Obviously, none of these three cases involves the same two statutes at issue here, *i.e.*, Title VII and section 1983. Nonetheless, they do provide some support for defendants' position in this matter.

Based on other authority, however, we are convinced that defendants' position is only partially correct. As to claims arising *solely* under Title VII, plaintiff may not rely on section 1983 (*i.e.*, so as to obtain a longer statute of limitations or more varied types of relief). Where a defendant's conduct violates both Title VII *and* the United States Constitution, however, section 1983 jurisdiction does exist. Our reasoning is as follows.

Because this question concerns the proper construction of two congressional enactments, we first turn to an examination of the legislative history. The House Report concerning the Equal Employment Oppor-

tunity Act of 1972, 42 U.S.C. § 2000e, contains the following passage:

> In establishing the applicability of Title VII to State and local employees, the Committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, is in no way affected.... Title VII was envisioned as an independent statutory authority meant to provide an aggrieved individual with an additional remedy to redress employment discrimination.... The Bill, therefore, by extending jurisdiction to State and local government employees does not affect existing rights that such individuals have already been granted by previous legislation.

H.R.Rep. No. 92–238, *reprinted in* 1972 U.S.Code Cong. & Ad.News 2137, 2154. *See also Trigg v. Fort Wayne Community Schools*, 766 F.2d 299, 301 (7th Cir.1985) (quoting this report).

We also note that, for *other* than federal employees, "the remedies available under Title VII and under section 1981 ... are separate, distinct, and independent." *Johnson v. Railway Express Agency*, 421 U.S. 454, 461, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975). And in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974), the Court recognized that "the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes."

Although some courts have found the Court's statements in *Johnson* and *Alexander* to have been weakened by the subsequent holdings in *Novotny*, *Sea Clammers*, and *Brown*, we do not agree. Each of the holdings in the three more recent cases can be explained in a way which is thoroughly consistent with the position advocated in this memorandum and order. For instance, *Novotny* was decided by a badly divided Court. Although six Justices joined in the majority opinion, two of those

six filed concurring opinions indicating that, under certain circumstances, they would agree with the three-Justice dissent. The dissent would have held that 42 U.S.C. § 1985(3) could be used to remedy violations of both constitutional and statutory (including Title VII) rights. The concurring Justices joined with the majority holding that section 1985(3) could not be used to remedy merely statutory violations, but agreed with the dissent that the statute could be used to remedy *constitutional* violations. *See* 442 U.S. at 379, 99 S.Ct. at 2352 (Powell, J., concurring); 442 U.S. at 385, 99 S.Ct. at 2355 (Stevens, J., concurring). The Court's opinion in *Sea Clammers* is consistent with this distinction between statutory and constitutional violations, because the only federal provisions examined in that case were environmental *statutes.* And in *Brown*, the Court's determination that Title VII provided a federal employee's exclusive remedy for claims of discrimination was based in part on the Court's finding that prior to the inclusion of such employees under Title VII in 1972, federal employees had no effective administrative or judicial remedy for employment discrimination. *See* 425 U.S. at 826, 96 S.Ct. at 1964–65. The clear implication of the *Brown* opinion is that Title VII would *not* have been held to be a federal employee's exclusive remedy if the Court believed that section 1981 had been effectively applied to federal employees prior to 1972.

In the instant case, the Title VII claims brought by plaintiff also state constitutional violations. That is, employment discrimination based on sex is barred not only by 42 U.S.C. § 2000e–2(a), but also by the fourteenth amendment to the Constitution. *Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed.2d 870 (1979); *see also Davis v. Passman,* 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271–72, 60 L.Ed.2d 846 (1979) (applying *fifth* amendment's equal protection guarantee in the *federal* employment context). Similarly, defendants' retaliation against plaintiff for her opposition to their discriminatory practices arguably violated both 42 U.S.C. § 2000e–3(a) *and* the first

amendment to the Constitution (for the reasons explained in part I.A., *supra* ). Because plaintiff's Title VII claims also allege constitutional violations, and because such constitutional violations could have been remedied through section 1983 even prior to the enactment of Title VII, the decisions in *Novotny, Sea Clammers,* and *Brown* would not preclude plaintiff's continued reliance on section 1983.

Nor are we otherwise convinced to accept defendants' contention. Although neither the Supreme Court nor the Tenth Circuit has decided this specific question, other circuit courts have done so. Those decisions are in substantial agreement with the position adopted herein. For instance, in *Day v. Wayne County Board of Auditors,* 749 F.2d 1199 (6th Cir.1984), the court considered the Supreme Court cases addressed above and concluded as follows:

> Where an employee establishes employer conduct which violates both Title VII and rights derived from another source—the Constitution or a federal statute—which existed at the time of the enactment of Title VII, the claim based on the other source is independent of the Title VII claim, and the plaintiff may seek the remedies provided by section 1983 in addition to those created by Title VII.

749 F.2d at 1205. Similarly, the Seventh Circuit in *Trigg v. Fort Wayne Community Schools,* 766 F.2d 299 (7th Cir.1985), held that "[a] plaintiff may sue her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme, even if the same facts would suggest a violation of Title VII." 766 F.2d at 302. The *Trigg* court added that its holding was "consistent with the great weight of authority." *Id.* (citing various district court decisions). The holding in *Bradshaw v. Zoological Society of San Diego,* 569 F.2d 1066 (9th Cir.1978), would appear to be at least as broad as that of the Sixth and Seventh Circuits in *Day* and *Trigg.* Although some of the *Bradshaw* plaintiff's Title VII claims had no obvious basis in the Constitution, the Ninth Circuit

reversed the district court's holding that the plaintiff's section 1983 recovery would be limited to that available under Title VII.

Finally, we note that Judge Rogers of this court has recently come to the same conclusion in the context of a claim brought under both Title VII and 42 U.S.C. § 1981. In *Ross v. Kansas Commission on Civil Rights*, No. 81–4132 (D.Kan., *unpublished*, Apr. 2, 1986), Judge Rogers refused to dismiss the section 1981 claim because plaintiff had a basis other than Title VII for asserting such a violation. *See Ross*, slip op. at 3–4.

■ Thus, although "the issue is not without doubt," *Day*, 749 F.2d at 1204, we conclude that a plaintiff may base a section 1983 claim on actions proscribed by Title VII where those actions also violate the United States Constitution. Whether, as in *Day*, we would estend this holding to actions based on another federal *statute* is a question we need not address. For now, we will simply deny defendants' motion for summary judgment as to plaintiff's section 1983 claim insofar as that claim is predicated on violations of the first amendment and the equal protection clause of the fourteenth amendment to the United States Constitution.

### C. *Procedural Due Process.*

The final provision on which plaintiff bases her section 1983 claim is the fourteenth amendment's guarantee of procedural due process. As the Court has long held:

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount.

*Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). In the instant case, plaintiff received no such hearing prior to her termination. To decide, then, whether defendants' motion for summary judgment should be granted as to plaintiff's claim for denial

of procedural due process, we must first determine whether plaintiff possessed either a property or liberty interest in her continued employment with the City.

#### (1) *Property Interest.*

■ Plaintiff's interest in her continued employment is a "property interest" for due process purposes only "if there are such rules or mutually explicit understandings that support [her] claim of entitlement to the benefit and that [she] may invoke at a hearing." *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). The existence of such "rules or mutually explicit understandings" must of course be determined by reference to state law. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Kansas City, Kansas, Fraternal Order of Police, Lodge No. 4 v. City of Kansas City, Kansas*, 620 F.Supp. 752, 756 (D.Kan.1984).

■ The Kansas Supreme Court has specifically addressed the conditions under which Kansas public employees enjoy a property interest in their continued employment. In *Stoldt v. City of Toronto*, 234 Kan. 957, 678 P.2d 153 (1984), the court reiterated that

> the tenure of any office not provided for in the constitution may be declared by statute, and when not so declared such office shall be held at the pleasure of the appointing authority. "Kansas law clearly establishes the encumbent to a public office enjoys no property or vested interest in public office."

234 Kan. at 964, 678 P.2d at 160 (quoting *Leek v. Theis*, 217 Kan. 784, 811, 539 P.2d 304, 326 (1975)). Plaintiff cites no constitutional or statutory provision under which she claims a property interest in continued employment. She does suggest, however, that a 1980 City ordinance requiring the personnel director (defendant Davis) to "develop and administer an employee grievance program" granted her a property interest in continued employment. We must disagree.

Although such grievance procedures are mentioned in plaintiff's affidavit, she makes no effort to explain their terms, and she concedes that the draft procedures "had not been officially approved by the [City] Council." Even assuming, however, that these grievance procedures would entitle plaintiff to certain procedural protections, they would not create a property interest for due process purposes. In *Asbill v. Housing Authority of Choctaw Nation*, 726 F.2d 1499 (10th Cir.1984), the court assumed that similar grievance procedures would grant permanent employees the right to a pretermination hearing and a two-week notice of dismissal. The court then stated:

> By themselves, however, these procedural protections do not support a "legitimate claim of entitlement" to future employment. At best, they merely support a claim of entitlement to the procedural protections themselves. At least five circuits have adopted the view that procedural protections alone do not create a protected property right in future employment; such a right attaches only when there are substantive restrictions on the employer's discretion.

726 F.2d at 1502 (citing supporting authority from the Second, Fifth, Sixth, Seventh, and Ninth Circuits). We thus conclude that the grievance procedures mentioned in the 1980 City ordinance provide no support for plaintiff's claim of a property interest in her continued employment.

Plaintiff's affidavit also refers to defendant Davis' oral assurance that her term of employment would last at least three years. In fact, the precise wording of plaintiff's affidavit is not nearly so definite as her attorney suggests. As quoted above, plaintiff's affidavit reads as follows: "The term of employment agreed upon for me to accomplish these tasks was three years, with an open possibility of extension beyond that time." Read in context, the reference to a three-year time period appears to be a *maximum* term, and not the minimum alleged by plaintiff. Under plaintiff's interpretation of this statement, she could presumably delay serious efforts to-

ward accomplishing these tasks until late in the third year of her employment without fear of losing her job. A far more likely interpretation is that defendant Davis considered the tasks assigned to plaintiff ones that could be completed within three years, and thus informed plaintiff that she should complete them within that period.

■ Although we are not free to speculate on the proper interpretation of this admittedly ambiguous statement, we conclude that it offers plaintiff no support. Plaintiff's interpretation flows from an unspoken premise that defendant Davis had the authority to offer plaintiff a definite term of employment of at least three years. If defendant Davis lacked such authority, plaintiff can make no *legitimate* claim of entitlement to continued employment. On this important issue, the City Code is quite specific. Because plaintiff makes no claim to have been a civil service employee, she would have fallen within the category of "appointive" officials. According to the Code, "the incumbent of any appointive office or employment of the city may be removed by a majority vote of the board of commissioners, *with or without cause.*" Section 2–146 (emphasis added). Any assurance by defendant Davis would thus have been meaningless. *See also Owens v. City of Derby, Kansas*, 586 F.Supp. 37, 40 (D.Kan.1984) (chief of police, although delegated authority to hire police officer, lacked authority to establish a definite duration of employment in contravention of official city policy).

Because plaintiff can point to no constitutional or statutory provision, no duly enacted city ordinance, nor any contractual agreement by which she obtained a property interest in her continued employment, we must conclude that plaintiff enjoyed no such interest. Accordingly, we will grant defendants' motion for summary judgment on this issue.

*(2) Liberty Interest.*

Plaintiff also claims entitlement to a pretermination hearing on the ground that her

liberty interest in continued employment was implicated by the manner in which her termination was accomplished.

To establish a liberty interest, "a public employee must now (1) show that he was *stigmatized* in connection with an alteration of her legal status as an employee, (2) allege that the stigma arose from substantially *false* characterizations of the employee or her conduct, and (3) demonstrate that the damaging characterizations were made *public* through channels other than the litigation initiated by the employee."

*Sipes v. United States*, 744 F.2d 1418, 1421 (10th Cir.1984) (quoting *Developments In The Law—Public Employment*, 97 Harv. L.Rev. 1161, 1789 (1984)) (emphasis by Tenth Circuit). *See also Asbill*, 726 F.2d at 1503.

 In the instant case, there is admittedly a dispute as to whether plaintiff was indeed guilty of the "unprofessional conduct" noted by defendant Davis in the notice of termination. As to the publication element, plaintiff advances three independent arguments. First, she contends that publication was effected when defendant Davis informed other City employees of the reason for plaintiff's termination. This argument is unavailing, however, because "such intra-government dissemination, by itself, falls short of the Supreme Court's notion of publication." *Asbill*, 726 F.2d at 1503. Plaintiff also alleges publication via defendant Davis' decision to grant the press access to City employees' personnel notebooks. As noted above, plaintiff's personnel notebook included her notice of termination and the reference to "unprofessional conduct" contained therein. Under the circumstances, we believe defendant Davis' decision to grant such access did amount to the needed publication. Finally, we accept plaintiff's third contention that her "voluntary" revelation of this comment to her potential employers could also amount to publication by defendants. Plaintiff states that she revealed the contents of her termination notice only when directly asked to do so by a potential employer. The law does not force a former

employee to choose between lying to a potential employer or telling the truth and then suffering the consequences of a former employer's false and stigmatizing reasons for effecting that employee's discharge. Especially is this true where, as here, the former employer's charge is simply too vague to be satisfactorily explained to a potential employer. *Cf. Asbill*, 726 F.2d at 1503 (holding that that plaintiff could satisfactorily explain that she had been terminated simply because she disagreed with her former employer on the question of his authority).

 Finally, plaintiff must establish that the charge of "unprofessional conduct" lodged against her by defendant Davis was stigmatizing. A liberty interest is implicated "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) (quoted in *Sipes*, 744 F.2d at 1422). In *Miller v. City of Mission, Kansas*, 705 F.2d 368 (10th Cir.1983), the court described as stigmatizing comments that "as a practical matter foreclosed other employment opportunities." 705 F.2d at 373. Such was clearly the case here. Plaintiff's reputation as a professional was certainly damaged by the charge of "unprofessional conduct," and, according to plaintiff, this charge has foreclosed other employment opportunities.

Defendants contend that the phrase "unprofessional conduct" is simply too vague to create the necessary stigmatizing effect. As to this issue, we agree with plaintiff that the comment's vagueness actually *contributes* to its stigmatizing effect. As plaintiff states in her response to defendants' motion:

The person who reads or hears that plaintiff was discharged for "unprofessional conduct" is left to speculation and conjecture as to whether she cheated, lied, embezzled, failed to perform her job duties, was gossipy, slovenly or just plain lazy. Did she wear halter tops to work?

Did she drink on the job? Did she scream at fellow workers? Did she have an affair with the janitor? These and many other things are all imaginable under the term "unprofessional conduct." Its ambiguity is the most condemning fact of all—there is no way in which plaintiff can address specific shortcomings, nor is she free to explain her termination in other terms, as she might have been able to do had defendant Davis simply checked the box marked "failure to follow instructions" or "failure to get along with others," etc. The term "unprofessional conduct" stands out like a red flag to the prospective employer and is probably the most defamatory and damaging statement one could make about a professional person.

Plaintiff's Response at 19–20.

At least for purposes of this summary judgment motion, then, plaintiff has established each of the three elements needed to show a deprivation of her liberty interest without procedural due process. We will thus deny defendants' motion for summary judgment on this issue.

### D. *Liability of Defendant City.*

■■■ In this action, plaintiff seeks to hold the City liable for the actions of defendant Davis. If she is to do so, plaintiff may not rely on the doctrine of *respondeat superior.*

[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's *policy or custom,* whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. New York City Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978) (emphasis added). Moreover, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle,* — U.S. ——, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). With these standards in mind, we turn to an examination of those aspects of plaintiff's section 1983 claim still remaining after our analysis in parts I.A., I.B., and I.C., *supra.*

■■■ Although plaintiff alleges that defendants deprived her of her liberty interest in continued employment without procedural due process, she makes no allegation sufficient to remove defendants' actions in that regard from the "single incident" exception enunciated in *Tuttle.* That is, plaintiff does not allege that defendant City had a policy or custom of accompanying the termination of troublesome employees with the publication of false and stigmatizing accusations against them. Rather, the circumstances surrounding plaintiff's termination appear to be quite unique to her situation. As to defendant City, then, we will grant defendants' motion for summary judgment on the liberty interest aspect of plaintiff's section 1983 claim.

■■■ Plaintiff does allege that defendant City had a policy or custom of firing those employees who chose to exercise their first amendment right to criticize defendants' non-compliance with employment discrimination laws. Because defendants offer no evidentiary materials in opposition to this allegation, we must accept it as true. We will thus deny defendants' motion for summary judgment as to the liability of defendant City under the first amendment aspect of plaintiff's section 1983 claim. We note, however, that the evidence of such a policy or custom appears to be exceedingly slim. We will thus pay special attention to this issue at trial and may eventually be compelled to direct a verdict in defendant City's favor on this issue.

■■■ Finally, plaintiff also alleges that various of the City's departmental directors and commissioners did engage in sexually

discriminatory employment practices. Indeed, plaintiff contends that the City's legal department was well aware of these practices. Because plaintiff has alleged a policy or custom of sexual discrimination, we must deny defendants' motion for summary judgment as to defendant City on the sex discrimination aspect of plaintiff's section 1983 claim.

### E. Qualified Immunity of Defendant Davis.

■ Defendant Davis moves for summary judgment on plaintiff's section 1983 claim on the ground that he enjoys "qualified immunity" from such a suit. The qualified immunity doctrine was clarified in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), where the Court held that government officials "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738. Plaintiff thus bears the burden of showing that the law applicable to each of the remaining aspects of her section 1983 claim was "clearly established" as of June 20, 1983, the date her employment was terminated. *Lutz v. Weld County School District No. 6*, 784 F.2d 340, 342–43 (10th Cir.1986). "Whether the law in question was clearly established when the conduct complained of occurred is a legal issue to be resolved by the court." *Miller v. City of Mission, Kansas*, 705 F.2d 368, 375 n. 6 (10th Cir.1983).

■ As we stated in *Scott v. City of Overland Park*, 595 F.Supp. 520, 524 (D.Kan.1984), "The right to be free of invidious discrimination on the basis of sex certainly is clearly established, and no one who does not know about it can be called 'reasonable' in contemplation of law." The Court's opinion in *Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271–72, 60 L.Ed.2d 846 (1979), made this undeniably clear.

Similarly, the law regarding the first amendment's protection of freedom of expression for public employees was clearly established at the time plaintiff was terminated. Citing *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Court in *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983), noted that *"[f]or at least 15 years*, it has been settled that a State cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." (Emphasis added.)

As to a public employee's liberty interest in his or her continued employment, one need only look to the Court's landmark decision in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Although the plaintiff in that case failed to establish that *he* had such a liberty interest, the analysis applied in that case has not changed in the intervening years.

■ Where it is shown that the law was clearly established at the time of the alleged violation, an official may still obtain qualified immunity "if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard." *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738. In such a case, the jury must decide what the official knew or should have known at the relevant point in time. *Lutz*, 784 F.2d at 342. Defendant Davis suggests no such "extraordinary circumstances" that would bar our imputation to him of constructive knowledge concerning the laws allegedly violated by his conduct.

Thus, based on the facts as we have found them for purposes of this summary judgment motion, defendant Davis is not entitled to qualified immunity on any of plaintiff's remaining section 1983 claims.

### F. Punitive Damages.

■ Both defendants seek summary judgment on the issue of their potential liability for punitive damages under plaintiff's section 1983 claim. Plaintiff concedes

that the City cannot be forced to pay punitive damages under such a claim. *See Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). As to defendant Davis, however, punitive damages are still an issue in this case. Consideration of punitive damages against an individual defendant is appropriate in a section 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). *See also Lavicky v. Burnett,* 758 F.2d 468, 477 (10th Cir.1985). As accepted for purposes of this summary judgment motion, the facts of this case clearly fall within the spectrum of defendant behavior held to implicate the punitive damages remedy.

Accordingly, we will grant defendants' motion for summary judgment as to plaintiff's request for punitive damages against defendant City on her section 1983 claim, but we will deny said motion as to defendant Davis.

## II. *Title VII.*

Through her Title VII claims (Count VII), plaintiff seeks both back pay and compensatory damages for defendants' discrimination on the basis of her sex, 42 U.S.C. § 2000e–2(a), and retaliation for her opposition to defendants' sexually discriminatory employment practices, 42 U.S.C. § 2000e–3(a). Although defendants' one-page motion for summary judgment appears to encompass all aspects of plaintiff's second amended complaint, the 47-page memorandum in support of that motion makes no reference to the merits of plaintiff's Title VII claims. We thus assume that defendants concede the inappropriateness of entering summary judgment on those claims.

■ Defendants do specifically request summary judgment as to plaintiff's entitlement to recover compensatory damages in a Title VII action. Plaintiff concedes that such damages are not recoverable. *See*

*Pearson v. Western Electric Co.,* 542 F.2d 1150, 1151 (10th Cir.1976). Defendants' motion for summary judgment will thus be granted to that extent.

## III. *State Law Claims.*

### A. *Jurisdiction.*

■ Defendants contend that plaintiff's state law claims (Counts II through VI) should be dismissed for lack of subject matter jurisdiction. Because the parties admittedly lack diversity of citizenship, we may hear plaintiff's state law claims only under our pendent jurisdiction. The determination of pendent jurisdiction is a two-step process. First, we must determine whether the Constitution would permit our exercise of jurisdiction over plaintiff's state law claims. The standard to be applied in making this determination was developed in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), where the Court explained:

> The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard for their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

383 U.S. at 725, 86 S.Ct. at 1138 (emphasis in original).

■ Our examination of plaintiff's second amended complaint convinces us that plaintiff's state and federal claims do derive from a common nucleus of operative fact and that she would ordinarily be expected to try them all in one judicial proceeding. We thus proceed to the second aspect of pendent jurisdiction, "an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether 'Congress in that statute has … expressly or by implication negated' the exer-

cise of jurisdiction over the particular non-federal claim." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978) (quoting *Aldinger v. Howard,* 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976)).

Relying on the authority of *Haroldson v. Hospitality Systems, Inc.,* 596 F.Supp. 1460 (D.Colo.1984), defendants assert that Title VII does impliedly negate our exercise of pendent jurisdiction over plaintiff's state law claims. The *Haroldson* court stated of Title VII that "[t]he legislative intent to negate pendent jurisdiction is manifested in the statute's procedural characteristics and limited remedial provisions." 596 F.Supp. at 1461. We are, of course, not bound by the *Haroldson* opinion. Nor have we found either Supreme Court or Tenth Circuit authority directly on point.

In this case, however, we see no need to decide the question posed by defendants. Plaintiff does not rely solely on Title VII for the invocation of this court's pendent jurisdiction. She also has a claim for violation of 42 U.S.C. § 1983. The *Haroldson* analysis simply does not apply to section 1983. Neither the procedural characteristics nor the remedial provisions of section 1983 differ in any significant respect from those of plaintiff's state law claims. Our exercise of jurisdiction over plaintiff's state law claims is thus properly pendent to her claim for violation of section 1983.

## B. *Defamation.*

Through Count II of her second amended complaint, plaintiff makes a claim for defamation. In particular, she contends that defendant Davis' comment that she was terminated for "unprofessional conduct" was defamatory. Defendants argue both that plaintiff cannot establish all the elements of a defamation claim and that, even if she can, defendants had either an absolute or a qualified privilege to utter such a defamatory statement. We now consider each of defendants' contentions.

### (1) *Elements of Defamation.*

The tort of defamation includes both libel and slander. *Luttrell v. United Telephone System, Inc.,* 9 Kan.App.2d 620, 620, 683 P.2d 1292, 1293 (1984), *aff'd,* 236 Kan. 710, 695 P.2d 1279 (1985). Slander is simply oral libel. *Gomez v. Hug,* 7 Kan.App.2d 603, 611, 645 P.2d 916, 923 (1982). The elements of the tort of defamation include (1) false and defamatory words, (2) communicated to a third person, (3) which result in harm to the reputation of the person defamed. *Luttrell,* 9 Kan.App.2d at 620–21, 683 P.2d at 1293. Should defendant Davis be found to have defamed plaintiff, the City would also be liable if the defamation occurred while Davis was acting within the scope of his authority. *Id.,* 9 Kan.App.2d at 621, 683 P.2d at 1293.

■ Because there is at least a factual dispute as to whether the accusation of "unprofessional conduct" was false, that aspect of plaintiff's defamation claim has been successfully established for purposes of this summary judgment motion.

Whether the statement was indeed defamatory turns in large part on whether it resulted in harm to the plaintiff's reputation. We thus consider those two elements of the tort simultaneously. Although defendants contend that plaintiff suffered no harm as a result of this comment, plaintiff need not prove such harm if the comment is considered libelous per se. "Words libelous *per se* are words which are defamatory in themselves and which intrinsically, by their very use, without innuendo and the aid of extrinsic proof, import injury and damage to the person concerning whom they were written." *Gomez,* 7 Kan.App.2d at 611, 645 P.2d at 923. By contrast, "words libelous *per quod* ... are words ordinarily not defamatory but which become actionable only when special damages are shown, that is, they are words the injurious character of which appears only in consequence of extrinsic facts." *Id.,* 7 Kan.App.2d at 612, 645 P.2d at 923. The determination of whether a statement is libelous or slanderous per se is a question of law for the court to determine. *Id.*

■ The law of Kansas is clear that a statement may be considered libel or slander per se only if it falls into one of the following four categories: (1) imputation of a crime, (2) imputation of a loathsome disease, (3) imputation of a person's unfitness for his trade or profession, or (4) imputation that a woman is unchaste. *Id.; Bradshaw v. Swagerty*, 1 Kan.App.2d 213, 215, 563 P.2d 511, 513 (1977). Clearly, the charge of "unprofessional conduct" falls squarely within category (3). Such an allegation directly impugns plaintiff's fitness for her profession. *See also* W. Prosser, *The Law of Torts* § 112(3) (1971).

■ The remaining element plaintiff must establish in order to recover on her defamation claim is communication. That is, plaintiff must establish that the comment regarding her "unprofessional conduct" was communicated by defendants to a third person. Plaintiff alleges that such communication was effected through three independent channels. First, she contends that defendant Davis informed other City employees of the comment he had made. As noted in part I.C.(2), *supra*, such intragovernmental communication falls short of the "publication" required to be shown in claims alleging deprivation of a liberty interest without procedural due process. *See Asbill v. Housing Authority of Choctaw Nation*, 726 F.2d 1499, 1503 (10th Cir. 1984). In Kansas, however, "remarks communicated by one corporate employee to another concerning the job performance of a third employee are publication for the purposes of a defamation action against the employer." *Luttrell*, 9 Kan.App.2d at 623, 683 P.2d at 1294. Because the Kansas Tort Claims Act, under which this defamation claim is brought against the City, makes the City liable "under circumstances where the [City], if a private person, would be liable under the laws of this state," K.S.A. 75–6103(a), we must apply a similar standard in this action. Thus, the intragovernmental communication that occurred here did constitute "communication" for purposes of plaintiff's defamation claim.

■ Similarly, defendants communicated this defamatory statement to third parties when they granted the press access to plaintiff's personnel notebook and the notice of termination contained therein.

■ Finally, the "voluntary" statements plaintiff made to potential employers regarding her reason for leaving the City's employ did constitute communication by defendants. Although a plaintiff's truly voluntary communication of a defamatory statement bars all recovery, a coerced repetition of the defamatory statement by the plaintiff has no such effect. *Munsell v. Ideal Food Stores*, 208 Kan. 909, 920, 494 P.2d 1063, 1072–73 (1972). Under the circumstances, plaintiff was effectively coerced into repeating the accusation of "unprofessional conduct." Had she not sought other employment, she ran the risk of facing reduced recovery for failure to mitigate damages. When she did choose to seek other employment, she had either to repeat the defamatory statement in response to direct questions *or* to deceive her potential employers. That she chose the course of honesty rather than deceit is to be commended, and should *not* be made the ground for denying her right to recover on this defamation claim.

(2) *Privileges to Communicate Defamatory Statement.*

We have just determined that, for purposes of this summary judgment motion, plaintiff has established all three elements of the tort of defamation. As an alternative basis for summary judgment on this claim, defendants contend that they were privileged to communicate such a defamatory statement. Although they lay some claim to an absolute privilege to do so, they place primary reliance on a qualified privilege. Because a defamation defendant's entitlement to either such privilege is a question of law for the court to determine, *Bradford v. Mahan*, 219 Kan. 450, 455, 548 P.2d 1223, 1228 (1976), we now examine each of these two privileges in turn.

■ An absolute privilege in defamation actions is recognized "in cases

where the public service or the administration of justice requires complete immunity, as in legislative, executive, or judicial proceedings, the occasion for the immunity being not so much for those engaged as for the promotion of the public welfare." *Bradford,* 219 Kan. at 454, 548 P.2d at 1228. As this definition suggests, the Kansas Supreme Court has narrowly construed the scope of this absolute privilege. The *Bradford* court noted: "The interests of the defamed citizen must be balanced against the public policy considerations. A grant of absolute privilege to public officers denies redress to the citizen who is defamed maliciously out of ill will or spite." *Id.,* 219 Kan. at 455, 548 P.2d at 1228. Defendant Davis' action in explaining why he terminated plaintiff's employment did not take place in a legislative, executive, or judicial proceeding. Nor does the public service or the administration of justice require complete immunity for such an action. Accordingly, defendants are not entitled to assert an absolute privilege to communicate this allegedly defamatory statement.

◼ A qualified privilege in the defamation context has been more broadly construed.

A communication is qualifiedly privileged if it is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, if it is made to a person having a corresponding interest or duty. The essential elements of a qualifiedly privileged communication are good faith, an interest to be upheld, a statement limited in its scope to the upholding of such interest and publication in a proper manner only to proper parties.

*Bradford,* 219 Kan. at 456, 548 P.2d at 1229 (quoting *Senogles v. Security Benefit Life Ins. Co.,* 217 Kan. 438, syl. ¶ 3, 536 P.2d 1358 (1975)); *see also Luttrell,* 9 Kan. App.2d at 622, 683 P.2d at 1294. Although a qualified privilege has been recognized in at least one employment termination case, *see Dobbyn v. Nelson,* 2 Kan.App.2d 358,

579 P.2d 721 (1978), this would not appear to be an appropriate case for invocation of a qualified privilege. The allegations of plaintiff's second amended complaint are inconsistent with a finding that defendant Davis made the accusation of "unprofessional conduct" in "good faith." Moreover, by granting the press access to plaintiff's personnel notebook, it may well be that defendant Davis communicated this statement to other than solely proper parties.

Even assuming that defendants met all the requirements for assertion of a qualified privilege, however, we would still deny their motion for summary judgment on this count. A defamation plaintiff may defeat the assertion of a qualified privilege by pleading and proving actual malice on defendant's part. *Bradford,* 219 Kan. at 454–55, 548 P.2d at 1228. "Proof of actual malice in defamation actions when a qualified privilege is found to exist requires a plaintiff to prove that the publication was made with knowledge that the defamatory statement was false or with reckless disregard of whether it was false or not." *Id.,* 219 Kan. at 455, 548 P.2d at 1228. At the very least, there remains a factual dispute as to whether defendant Davis communicated this statement out of actual malice. For example, plaintiff asserts that Davis told her he would ruin her reputation and that she would never again function as a professional in the community. If this statement was indeed made, malice would be all but proven.

Because defendant Davis' accusation that plaintiff was terminated for "unprofessional conduct" was libelous per se, meets all the other elements of the tort of defamation, and has not yet been shown to have been privileged, we must deny defendants' motion for summary judgment on Count II of plaintiff's second amended complaint.

### C. *Wrongful Discharge.*

In Count III of her second amended complaint, plaintiff alleges that she was wrongfully discharged from her employment. Before examining this claim in more detail,

we note that Kansas courts follow "the general rule that in the absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party." *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 54, 551 P.2d 779, 781 (1976). *See also Owens v. City of Derby, Kansas*, 586 F.Supp. 37, 40 (D.Kan.1984). Accordingly, plaintiff may recover on this count only if she can establish an exception to the employment-at-will doctrine. We examine seriatim each of the three theories she proposes.

### (1) *Breach of Express Contract.*

As explained in part I.C.(1), *supra*, plaintiff contends that she was orally assured by defendant Davis that her employment would extend for a term of at least three years. For the reasons there discussed, however, we must reject this contention. That is, even assuming the ambiguous statement repeated in plaintiff's affidavit actually referred to a minimum, as opposed to a maximum, term of employment, defendant Davis clearly lacked even apparent authority to extend such an offer of tenure to someone in plaintiff's position.

### (2) *Breach of Implied Covenant of Good Faith and Fair Dealing.*

As an alternative basis for maintaining her claim for wrongful discharge, plaintiff alleges "[t]hat defendants' actions were in bad faith and were violative of the covenant of good faith and fair dealing implicit in plaintiff and defendants' employment relationship." Second Amended Complaint, ¶ 34. Although no Kansas appellate court has directly addressed the existence of such an implied covenant of good faith and fair dealing, this court has uniformly rejected claims based on that theory. *See Fletcher v. Wesley Medical Center*, 585 F.Supp. 1260, 1263 (D.Kan.1984); *Mattern v. Chance Manufacturing Co., Inc.*, 115 L.R.R.M. (BNA) 3219, 3221 (D.Kan., Feb. 9, 1984); *Robinson v. Colt Industries*, No. 84–2472, slip op. at 9 (D.Kan., *unpub-*

*lished,* Mar. 5, 1986); *Smitley v. CIGNA Corp.*, 640 F.Supp. 397, at 401 (D.Kan. 1986). Plaintiff has failed to convince us that our prior decisions were in error. Thus, we must once again reject this claim for breach of an implied covenant of good faith and fair dealing.

### (3) *Retaliatory Discharge.*

Recently, the Kansas courts have recognized an important exception to the employment-at-will doctrine. In *Murphy v. City of Topeka*, 6 Kan.App.2d 488, 630 P.2d 186 (1981), the Kansas Court of Appeals held that a plaintiff who alleges that his termination was in retaliation for claiming workers' compensation benefits against his employer states a valid claim for retaliatory discharge. We followed *Murphy* in *Kistler v. Life Care Centers of America, Inc.*, 620 F.Supp. 1268, 1270 (D.Kan.1985), where we concluded "that an employer in Kansas cannot fire an at-will employee for testifying at an unemployment compensation hearing and, therefore, that plaintiff has stated a valid cause of action for retaliatory discharge." In her response to defendants' summary judgment motion, plaintiff asks that we apply this retaliatory discharge theory to the facts of the instant case. That is, she contends that the Kansas courts would recognize an exception to the employment-at-will doctrine for employees whose discharge was in retaliation for their opposition to their employer's discriminatory employment practices. Despite the apparent appeal of this argument, we must decline plaintiff's invitation.

In *Tarr v. Riberglass, Inc.*, No. 83–4234 (D.Kan., *unpublished*, Feb. 6, 1984) [Available on WESTLAW, DCTU database], Judge Rogers considered a similar invitation to recognize an exception to the employment-at-will doctrine for employees terminated in violation of the Kansas public policy against age discrimination. He declined to do so on the ground that such an exception is proper only when a plaintiff shows that he was discharged in contravention of public policy *and* that he is without

a remedy under either state or federal law. *Tarr,* slip op. at 5. Because a plaintiff who suffers discrimination in employment due to age does have such an alternative remedy, Judge Rogers refused to recognize the desired exception to the employment-at-will doctrine.

In *Robinson,* we followed Judge Rogers' *Tarr* analysis in declining to recognize an exception to the employment-at-will doctrine for employees discharged in violation of the Kansas public policy against sex discrimination. We there concluded that such a plaintiff has a remedy under both the Kansas Act Against Discrimination and Title VII of the Federal Civil Rights Act of 1964. Clearly, the same is true of this plaintiff. As noted in part II., *supra,* Title VII provides a remedy for both sex discrimination in employment, 42 U.S.C. § 2000e–2(a), and retaliation on account of opposition to such discriminatory employment practices, 42 U.S.C. § 2000e–3(a).

We are aware that Judge Theis has declined to adopt this "no other remedy available" requirement for the recognition of public policy exceptions to the Kansas employment-at-will doctrine. *See Wynn v. Boeing Military Airplane Co.,* 595 F.Supp. 727, 729 (D.Kan.1984). He reasoned that a Kansas common law action "may provide remedies not available under federal law and does not have requisites that the federal law possesses." *Id.* While we recognize the logic of this position, we must respectfully decline to follow the *Wynn* analysis. Given the strong Kansas policy in favor of employment-at-will, we find it unlikely that the Kansas courts would recognize an exception to this doctrine where plaintiff has an *adequate* remedy for the conduct complained of—even though one could conceive of a remedy offering more comprehensive relief.

Because plaintiff has failed to establish the applicability to this case of any exception to the Kansas employment-at-will doctrine, we must reject her claim for wrongful discharge. Accordingly, we will grant defendants' motion for summary judgment as to Count III of the second amended complaint.

### D. *Outrage/Emotional Distress.*

Counts IV and V of plaintiff's second amended complaint purport to state causes of action for outrage and intentional infliction of emotional distress, respectively. Because it is clear that these two terms are simply different names for the same cause of action, *see Roberts v. Saylor,* 230 Kan. 289, 289, 637 P.2d 1175, 1177 (1981), we will give concurrent consideration to those two counts.

Proof of the following four elements is required to establish a cause of action for outrage:

(1) the conduct of defendant must be intentional or in reckless disregard of plaintiff;

(2) the conduct must be extreme and outrageous;

(3) there must be a causal connection between defendant's conduct and plaintiff's mental distress; and

(4) plaintiff's mental distress must be extreme and severe.

*Roberts,* 230 Kan. at 292, 637 P.2d at 1179. However, before an outrage claim may be allowed to proceed, the court must determine if two threshold requirements have been met. That is, the court must be convinced that reasonable fact finders might differ as to "(1) [w]hether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it." *Id.,* 230 Kan. at 292–93, 637 P.2d at 1180.

We thus turn our attention to the first of these two threshold requirements, whether the defendants' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. In *Roberts,* the court admonished that

liability may be found only in those cases where the conduct has been so out-

rageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.... [L]iability may be found to exist generally in a case when the recitation of facts to an average citizen would arouse resentment against the actor, and lead that citizen to spontaneously exclaim, "Outrageous!"

230 Kan. at 293, 637 P.2d at 1179. It is clear that the defendants' conduct in this case fails to meet the stringent standard for an outrage cause of action. As we noted in *Fletcher:*

[T]he termination of an employee, whatever the secret motive underlying it, is the kind of event that happens every day; such an act is not even a breach of modern-day business etiquette, much less an uncivilized barbarism. Quite a bit more—such as the endless stream of vulgar, racist invective and threats of violence uttered by the defendant in *Gomez v. Hug*, 7 Kan.App.2d 603, 645 P.2d 916 (1982)—must accompany a firing if it is to be deemed "outrageous."

585 F.Supp. at 1262.

▆ Nor has plaintiff established the second threshold requirement, that the emotional distress she suffered was so severe that no reasonable person should be expected to endure it. Again, the *Roberts* court offered words of caution: "The extreme distress required must be reasonable and justified under the circumstances, and there can be no liability where the plaintiff has appeared to suffer exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor had knowledge." 230 Kan. at 294, 637 P.2d at 1180. Although plaintiff might have been understandably upset at having been discharged, and especially so for having suffered that fate for such illegitimate reasons, her distress could not reasonably be found to meet the requirements for the tort of outrage. "Until such a time as job security is recognized as some sort of natural right, reasonable people can be expected to en-

dure the pain of job loss as 'part of the price of living among people.'" *Fletcher*, 585 F.Supp. at 1262 (quoting *Restatement (Second) of Torts* § 46, Comment j).

Having failed to establish that reasonable fact finders might differ as to whether plaintiff can establish either of the two threshold requirements, we are compelled by the Kansas case law to withdraw from the jury's consideration plaintiff's cause of action for outrage. We will thus grant defendants' motion for summary judgment on Counts IV and V of plaintiff's second amended complaint.

### E. *Negligent Supervision.*

▆ In Count VI of plaintiff's second amended complaint, she alleges "[t]hat that the defendant City negligently and carelessly supervised or negligently and carelessly provided supervision over plaintiff and over plaintiff's supervisors and superiors." Second Amended Complaint, ¶ 41. As we noted in *Robinson*, "The court is unaware of any case in which the Kansas courts have recognized such a cause of action in the employment discrimination context. In light of the Kansas courts' strict adherence to the employee-at-will doctrine, we find no basis for recognizing such a cause of action." Slip op. at 9. Given the parties' failure to cite any such case, we will adhere to our conclusion that no cause of action for negligent supervision does exist in the employment discrimination context. Accordingly, we will grant defendants' motion for summary judgment on Count VI of plaintiff's second amended complaint.

### F. *Kansas Tort Claims Act Considerations.*

As noted above, plaintiff's state law claims are brought pursuant to the Kansas Tort Claims Act, K.S.A. 75–6101 to 75–6115. Relying on the language of that statute, defendants make the following two arguments. First, they contend that their actions fall within the exception from liability granted for the performance of discretionary functions. Second, assuming that

argument is rejected, they assert that they cannot be held liable for punitive damages. Because we have already explained why defendants' motion for summary judgment must be granted as to all of plaintiff's state law claims except defamation, we will consider defendants' arguments only as they relate to plaintiff's defamation count.

(1) *Discretionary Function Exception.*

K.S.A. 75–6103(a) states the general rule regarding a Kansas governmental entity's liability for the acts or omissions of its employees. Assuming those employees are acting within the scope of their employment, such an entity is liable for damages caused by its employees' negligent or wrongful act or omission "under circumstances where the governmental entity, if a private person, would be liable under the laws of this state." As explained in part III.B., *supra,* defendants would be liable to plaintiff for defamation if plaintiff can establish that defendant Davis acted with "actual malice" in communicating to third parties his comment that plaintiff was discharged for "unprofessional conduct" (*i.e.,* thus establishing that defendant Davis forfeited his qualified privilege to communicate such information). To escape liability on plaintiff's defamation claim, defendants rely on K.S.A. 75–6104(d), which provides as follows:

A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

(d) any claim based upon the failure or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or an employee, whether or not the discretion be abused.

Our task is thus to determine whether defendants' alleged defamatory conduct falls within this discretionary function exception to the Kansas Tort Claims Act.

In answering this question, we begin with the Kansas Supreme Court's admonition that "the Kansas Tort Claims Act takes an open-ended approach to governmental liability. In other words, liability is the rule while immunity the exception." *Jackson v. City of Kansas City,* 235 Kan. 278, 286, 680 P.2d 877, 886 (1984). Moreover, "the burden is upon the defendant governmental entity or defendant employee to establish governmental immunity under one or more of the exceptions of K.S.A. 1983 Supp. 75–6104." *Id.*

We have not found, and the parties have not cited, any Kansas cases involving a Kansas tort claims action based on defamation. We receive some guidance, however, from the construction applied to the analogous discretionary function exception to the *Federal* Tort Claims Act, 28 U.S.C. § 2680(a). In *Robertson v. City of Topeka,* 231 Kan. 358, 644 P.2d 458 (1982), the Kansas Supreme Court discussed various federal court constructions of that exception, 231 Kan. at 360–61, 644 P.2d at 461–62, and adopted the construction advanced by the Sixth Circuit in *Downs v. United States,* 522 F.2d 990 (6th Cir.1975). The *Downs* court reached the following conclusion:

We believe that the basic question concerning the exception is whether the judgments of a Government employee are of "the nature and quality" which Congress intended to put beyond judicial review. Congress intended "discretionary functions" to encompass those activities which entail *the formulation of governmental policy,* whatever the rank of those so engaged. We agree with a commentator's analysis of the provision:

It would seem that the justifications for the exception do not necessitate a broader application than to those decisions which are arrived at through an administrator's exercise of a quasi-legislative or a quasi-judicial function.

522 F.2d at 997 (internal quotation footnoted to *Developments In The Law—Remedies Against The United States And Its Officials,* 70 Harv.L.Rev. 827, 896 (1957)) (emphasis added). This reliance on the "nature and quality" of the alleged discretionary acts was followed by the Kansas Supreme Court in *Jackson,* 235 Kan. at

289, 680 P.2d at 888, and by this court in *Beck v. Kansas University Psychiatry Foundation*, 580 F.Supp. 527, 539 (D.Kan. 1984).

In the instant case, defendants contend that a governmental employee's decision to terminate a subordinate's employment is clearly a discretionary function. Based on the *Downs/Robertson* test, such a decision may indeed constitute the formulation of governmental policy—thus qualifying as a discretionary function. Plaintiff's remaining state law claim, however, relates not to the termination of her employment, but to the alleged defamation that occurred during the course of that termination. There is simply no indication that defendant Davis was setting governmental policy when he chose to indicate the reason for plaintiff's termination and then to make that information available to third parties. Thus, even assuming that defendants' decision to terminate plaintiff's employment was a discretionary function, we must conclude that plaintiff's claim for defamation is not barred by the discretionary function exception to the Kansas Tort Claims Act.

### (2) *Punitive Damages Under KTCA.*

In plaintiff's defamation count (Count II), she prays for "compensatory damages, punitive damages, attorney's fees, costs and all other damages provided by law and equity against the defendants." Defendants contend that the Kansas Tort Claims Act relieves them of liability for punitive damages. In support of their contention, they cite K.S.A. 75–6105(c), which reads as follows:

(c) A governmental entity shall not be liable for punitive damages or for interest prior to judgment. An employee acting within the scope of the employee's employment shall not be liable for punitive damages or interest prior to judgment, except for any act or omission of an employee because of actual fraud or actual malice.

In response to defendants' citation of this provision, plaintiff concedes that defendant

City cannot be forced to pay punitive damages under the defamation count. She makes no such concession, however, as to defendant Davis.

At this point, we must agree with plaintiff that defendant Davis could conceivably be liable for punitive damages on this defamation count. As noted in part III.B.(2), *supra*, plaintiff may defeat defendant Davis' claim of a qualified privilege to communicate defamatory material if she establishes that he acted with "actual malice." As we also noted, there is at least a factual dispute as to whether defendant Davis did act with actual malice. For instance, plaintiff's affidavit states that defendant Davis told her he would ruin her reputation and that she would never again function as a professional in the community. Given the possibility that a jury could find that defendant Davis acted with actual malice in communicating the alleged defamatory statement, we must deny defendants' motion for summary judgment as to punitive damages against defendant Davis on Count II of plaintiff's second amended complaint.

### Conclusion

For the aid of the parties, we will summarize those aspects of plaintiff's second amended complaint that remain to be determined at trial. These include Count I insofar as it relates to a violation of plaintiff's rights under the first amendment, the equal protection clause of the fourteenth amendment, and a deprivation of plaintiff's liberty interest under the due process clause of the fourteenth amendment. Although both defendants remain potentially liable for violations of the first amendment and equal protection clause, only defendant Davis may be held liable for deprivation of plaintiff's liberty interest without procedural due process. Assuming plaintiff can establish liability under any of these various theories, she may recover both compensatory and punitive damages against defendant Davis, but only compensatory damages against defendant City.

Count II, alleging defamation, also remains for trial. Although both defendants

remain potentially liable under this count, only defendant Davis may be held liable for punitive damages.

Finally, plaintiff's Title VII count, Count VII, remains for trial to the court. Although both defendants remain in the case for purposes of Title VII, any remedy under this count will be limited to back pay and other equitable relief.

### ORDER

IT IS THEREFORE ORDERED that defendants' motion for summary judgment is granted as to the following aspects of plaintiff's second amended complaint: (1) the entirety of Counts III, IV, V, and VI; (2) so much of Count I as is predicated on a deprivation of plaintiff's property interest without due process of law; (3) so much of Count I as attempts to hold defendant City liable for the alleged deprivation of plaintiff's liberty interest without procedural due process; (4) plaintiff's prayer for recovery of punitive damages against defendant City; and (5) plaintiff's prayer for recovery of compensatory damages under Count VII.

IT IS FURTHER ORDERED that defendants' motion for summary judgment is denied in all other respects.